RECEIVED
JAN 19 2016
AT 8:30_____ M
WILLIAM T. WALSH
CLERK

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

KYSHON RICHARDSON,

Defendant.

Crim. No. 15-0176

**OPINION**

THOMPSON, U.S.D.J.

This matter comes before the Court by way of the motion of Defendant Kyshon Richardson ("Defendant" or "Richardson") to suppress evidence seized from Defendant's vehicle on May 5, 2014. (ECF No. 10). The Government opposes. (ECF No. 18). The Court has considered the submissions and arguments of counsel made in support of and in opposition to Defendant's motion, as well as the evidence offered during the evidentiary hearing held on January 11, 2016. For the reasons set forth below, Defendant's motion to suppress will be denied.

FACTS

This case concerns the stop and seizure of Defendant Kyshon Richardson and a co-defendant, Issach E. Powell, Jr. ("Powell"), made by officers of the Freehold Borough Police Department on May 2, 2014. The stop resulted in the seizure of Defendant's vehicle on May 2, 2014, and after obtaining a search warrant on May 5, 2014, a search that led to the discovery of two handguns in the vehicle. Because both Richardson and Powell have felony convictions, they were charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

1

In April 2014, the Monmouth County Prosecutor's Office began working closely with the Freehold Borough Police Department to address a recent increase in gun violence in Freehold Borough. As part of this effort, the Freehold Borough Police Department conducted plain-clothes surveillance at locations known for frequent gang activities. Sergeant Christopher Otlowski, an officer trained in the field of narcotics and weapons investigations, was assigned to this detail on Friday, May 2, 2014.

After spending time at various locations on May 2, Sergeant Otlowski noticed significant foot traffic outside a house located at 81 Center Street. Sergeant Otlowski was aware that there had been a shooting at 81 Center Street the previous month. Additionally, Sergeant Otlowski knew that Defendant Powell frequented 81 Center Street, and that Powell had been shot at a nearby location just the previous week. Sergeant Otlowski concealed himself approximately 40 yards from the house under a neighboring porch, and witnessed several suspected narcotics transactions. He communicated what he saw to police officers stationed nearby. The first transaction consisted of a known Controlled Dangerous Substances ("CDS") distributor carrying a bag into the rear yard of 81 Center Street, then emerging 10 minutes later without the bag. He was stopped by law enforcement after he left the house, and $800 was found on his person. In the second transaction, Sergeant Otlowski witnessed a male suspect park his car across from 81 Center Street, go to the rear of the house, and return to his car within two minutes. The suspect was stopped soon after he drove away, and a large bag of marijuana was found in his car.

Following these suspected narcotics transactions, a gold-colored Lexus containing three men, including Richardson and Powell, arrived at 81 Center Street and parked across the street – leaving the motor running. Sergeant Otlowski had personally arrested both Richardson and Powell previously. He knew Powell was a gang member with a firearms-related conviction, and

2

he knew that Richardson had been charged with CDS distribution. Sergeant Otlowski witnessed the men exit the vehicle: Powell entered the house, while Defendant Richardson remained outside and walked up and down the driveway. Other individuals were also congregated outside 81 Center Street. After approximately five minutes, Sergeant Otlowski witnessed a third suspected narcotics transaction. An unknown man approached Defendant Richardson on foot. He met with Richardson in the driveway and they walked toward the intersection of Second Street and Center Street. The man took out something from his wallet and handed it to Richardson. Richardson walked back to the rear of 81 Center Street. Shortly afterward Richardson returned to the intersection where the man was standing. Then Defendant asked, "Are we straight?" The man responded, "Yeah, we're good," and walked off. Sergeant Otlowski testified that this interaction was also consistent with a suspected narcotics transaction.

After this interaction, Defendant briefly entered the front of 81 Center Street, exited with an object, and then placed that object inside his vehicle. After Defendant spoke further with other persons, Defendant entered the vehicle, made a U-turn in Center Street, and drove the car over the curb directly up to the front porch of 81 Center Street. Powell quickly entered the passenger side of the vehicle, and the two drove off. Based on the suspected narcotics transactions and the illegal U-turn, Sergeant Otlowski called for another officer in a marked police vehicle to stop Defendant's vehicle. Officer Sean Healey responded and pulled out behind Defendant's vehicle. In an apparent effort to avoid Officer Healey, Defendant made a fast and abrupt left turn and drove around the block, heading back towards 81 Center Street. After Defendant drove around the block, making four left turns, Officer Healey turned on his overhead lights and made the stop. When Sergeant Otlowski arrived and saw the crowd in front of 81 Center Street he called for backup, which arrived shortly.

When Officer Healey and a backup officer approached the vehicle, the officers saw that Powell was wearing a bulletproof vest. Given the recent spate of gun violence in the neighborhood, they removed both Richardson and Powell from their vehicle. Both defendants were frisked, handcuffed and placed in separate police cars. Sergeant Otlowski advised them both of their *Miranda* rights. In view of the suspected narcotics activity that Defendant Richardson appeared to be a part of, a K-9 unit was called to sniff their car for narcotics. Defendant Richardson was given two summonses for two traffic violations: careless driving and improper backing (the latter relating to the illegal U-turn).

Approximately 90 minutes after Defendant was initially stopped, Monmouth County Sheriff's Officer J. Avotino arrived with his certified K-9 partner, Ari. The testimony was that Ari and other K-9s have their abilities tested every month. Ari consistently passed his tests, and had a 95% accuracy rate in alerting when drugs are present. Ari conducted an exterior sniff of the vehicle and alerted on both the driver's side door and the rear driver side door for the presence of drugs. At this time, Richardson and Powell were released, but they were advised that the vehicle would be seized pending a search warrant investigation for narcotics.

The Freehold Borough Police Department kept the vehicle over the weekend in the police garage and obtained a warrant to search the vehicle for narcotics the following Monday, May 5, 2014. The execution of the search warrant did not lead to the discovery of any narcotics, but two handguns were found. One was found between the driver's seat and the console, and the other was found between the passenger's seat and the console. Because both Richardson and Powell have prior felony convictions, they were charged with 18 U.S.C. § 922(g)(1), unlawful possession of a firearm by a convicted felon. Defendant Richardson now moves to suppress the

4

weapons as the fruit of a search and seizure that violated the Fourth Amendment to the U.S. Constitution.

## DISCUSSION

### A. Legal Standard

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To prevail on a motion to suppress, a defendant generally bears the burden of proving that the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta,* 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated."). However, once the defendant has established a basis for his motion, *i.e.,* that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *U.S. v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

### B. Analysis

In deciding whether the search of the vehicle and the seizure of evidence from the vehicle violated Defendant's Fourth Amendment rights, the Court must consider the following: (1) whether the officers had a reasonable suspicion that a crime was being committed to justify the stop of Defendant's vehicle; (2) whether the officers unconstitutionally ordered Defendant out of the car and unconstitutionally conducted a search of his person; (3) whether the officers unconstitutionally prolonged the stop to conduct an unlawful K-9 dog sniff; (4) whether the officers had probable cause to seize Defendant's vehicle; and (5) whether the search warrant obtained for Defendant's vehicle was based on probable cause. The Court will address each

argument in turn. Up until the police received a search warrant for the search of the car, the police must prove the reasonableness of the search.

## (1) Whether the Officers Had a Reasonable Suspicion That a Crime Was Being Committed to Justify the Stop of Defendant's Vehicle

Defendant argues that the stop of his vehicle was unlawful because the officers did not have a reasonable suspicion that a crime was committed or was being committed. Defendant argues that the observed behavior at 81 Center Street did not create a reasonable suspicion of narcotics activity and that he did not perform any traffic violations that would have justified a traffic stop. Moreover, Defendant argues that because he was actually stopped by Officer Healey, and not Sergeant Otlowski, the Court can only consider the incidents observed by Officer Healey to justify the stop.

As to Defendant's assertion that the Court can only consider Officer Healey's observations, this is contradicted by the Third Circuit's rulings on collective knowledge. Under the collective knowledge doctrine, "the knowledge of one law enforcement officer is imputed to the officer who actually conducted the search, seizure, or arrest." *United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010). In *Whitfield*, the Third Circuit stated that the collective knowledge doctrine, which had previously been applied in other Fourth Amendment contexts, also applied to *Terry* stops such as the one conducted by Officer Healey. *See id.* at 745-46 (citing *United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979); *United States v. Menon*, 24 F.3d 550, 562 (3d Cir. 1994) (referencing *Terry v. Ohio*, 392 U.S. 1 (1968)). Because the information known to Sergeant Otlowski can be imputed to Officer Healey under the collective knowledge doctrine, the Court will consider the knowledge of both parties in relation to the stop.

Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Therefore, the Supreme Court has held that in order to conduct a traffic stop, an officer must have a reasonable, articulable suspicion that a violation of the law has occurred. *Id.* at 663; *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Velasquez*, 885 F.2d 1076, 1081 (3d Cir. 1989), *cert. denied*, 494 U.S. 1017 (1990). In deciding whether a traffic stop was based on reasonable suspicion, courts "must consider the totality of the circumstances, including the police officer's knowledge, experience, and common sense judgments about human behavior." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). Among the "pertinent factor[s]" that an officer may consider are whether the area is a high-crime area, a suspect's "nervous, evasive behavior," and flight from police officers. *Wardlow,* 528 U.S. at 124.

Here, the Court finds that the officers had the requisite reasonable suspicion to stop Defendant's vehicle. Sergeant Otlowski testified that the three interactions he witnessed at 81 Center Street gave rise to a strong inference of narcotics trafficking. One such interaction involved Defendant shortly before his entering the vehicle. Defendant argues that the officers did not have a reasonable suspicion because Sergeant Otlowski did not actually witness drugs changing hands, and the behavior he witnessed is susceptible to an innocent explanation. However, Sergeant Otlowski's conclusions were based on his extensive experience and training in narcotics investigations. The Court must give significant deference to an officer's judgments, because officers' experience and specialized training may lead to inferences and deductions about criminal activity that "might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *Robertson*, 305 F.3d at 167. Given Sergeant Otlowski's experience and training in narcotics investigations,

it is reasonable to conclude that Sergeant Otlowski recognized a narcotics transaction even if the interactions might seem innocent to an untrained observer.

Moreover, Sergeant Otlowski's deduction was based on additional factors beyond the suspected narcotics transactions. The rise of gun violence in the neighborhood indicated that Defendant was in a high-crime area. Sergeant Otlowski recognized Defendant's passenger, Powell, as a known gang member and a victim of recent gun violence in the neighborhood, and he recognized Richardson as someone who had previously been charged with narcotics distribution. Defendant's erratic driving after sighting Officer Healey's vehicle behind him suggests "nervous, evasive behavior" or flight from the police. Defendant's traffic violations, including careless driving and an illegal U-turn, created additional justification for the stop. *See United States v. Johnson,* 434 F. App'x 159, 162 (3d. Cir. 2011) (holding that "[t]he Supreme Court [has] established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime"). While each individual factor could be susceptible to an innocent explanation, when taken together, they warranted further investigation. *See Arvizu*, 534 U.S. at 274; *see also United States v. Brown,* 448 F.3d 239, 251 (3d Cir. 2006) (reasonable suspicion established by defendants' presence in high crime area, behavior consistent with criminal activity as judged from perspective of experienced officer, and evasive behavior or flight from police); *United States v. Lopez*, 441 F. App'x 910, 913 (3d Cir. 2011) (reasonable suspicion established by defendants' presence in high crime area and exchange of a small article without first shaking hands, suggesting a hand-to-hand narcotics transaction). Considering the totality of the circumstances, the officers had a reasonable, articulable suspicion that a crime had occurred, which justified conducting the traffic stop.

8

## (2) Whether the Officers Unconstitutionally Ordered Defendant Out of the Car and Unconstitutionally Conducted a Search of His Person

Defendant also argues that the officers had no basis to order him out of the vehicle or to conduct a warrantless search of his person during the stop. The Supreme Court has held that once a motor vehicle has been lawfully detained, the police officers may order the driver to exit the vehicle without violating the Fourth Amendment's proscription against unreasonable searches and seizures. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *see also Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (affirming *Mimms* and extending that decision to passengers in a vehicle during a traffic stop); *Michigan v. Long*, 463 U.S. 1032, 1047-48 (1983) ("[P]olice may order persons out of an automobile during a [traffic] stop"). As described above, the Court has determined that the officers' stop of Defendant's vehicle was lawful. Given this determination and the law enunciated by the Supreme Court, the Court finds that the officers' decision to order Defendant from the vehicle was lawful.

As to the search of Defendant's person, the Court finds that this was also lawful. Because traffic stops are "especially fraught with danger to police officers," *Long*, 463 U.S. at 1047, the Supreme Court has ruled that once an officer orders an individual to step outside the vehicle, he may conduct a brief frisk of that individual if he reasonably suspects that the person is armed and dangerous. *Mimms*, 434 U.S. at 112; *see also Arizona v. Johnson*, 555 U.S. 323, 332 (2009) (noting that officers who conduct routine traffic stops may perform a pat-down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous); *Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998); *Terry,* 392 U.S. 1. The recent gun violence in the area, in addition to Powell's bulletproof vest, gave the officers a reasonable suspicion that

9

Richardson and Powell might be armed and dangerous. Therefore, in the interests of officer safety, it was lawful for the officers to frisk Richardson and handcuff him.

### (3) Whether the Officers Unconstitutionally Prolonged the Stop to Conduct an Unlawful K-9 Dog Sniff

Defendant next argues that the officers unlawfully extended the vehicle stop in detaining Richardson and Powell so that a K-9 could conduct an exterior search of the vehicle. The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The stop may last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also Caballes*, 543 U.S. at 407; *United States v. Sharpe*, 470 U.S. 675, 686 (1985). In *Rodriguez*, the Supreme Court held that a traffic stop prolonged beyond the point necessary to address the traffic violation that warranted the stop is unlawful. 135 S. Ct. 1609.

Here, the Court finds that the extension of the stop to conduct a K-9 dog sniff was lawful. Although addressing Defendant's traffic violations bolstered the officers' justifications for the stop, they were not the mission of the stop. Rather, the mission of the stop was to address the suspected narcotics activity. Therefore, this case is distinguishable from *Rodriguez*, in which the mission of the stop was simply to address the traffic violation. Because the officers had not yet completed their mission, even after they issued the traffic citations to Defendant, they did not artificially prolong the stop by waiting for the K-9 unit. This means that the extension of the stop was lawful. The dog sniff itself was also lawful, because based on the suspected narcotics activity observed by Sergeant Otlowski, and Defendant's apparent attempt to evade the police, the officers had reason to believe that Defendant's vehicle might contain narcotics. Moreover,

10

except in the context of a home search where there is a greater expectation of privacy, the Supreme Court has held that a dog sniff does not constitute a search. *See, e.g., United States v. Place*, 462 U.S. 696, 707 (1983) (concluding that a dog sniff in a public place does not constitute a search for Fourth Amendment purposes); *but see Florida v. Jardines*, 133 S. Ct. 1409, 1416 (2013) (concluding that a dog sniff of the exterior of a house does constitute a search).

### (4) Whether the Officers Had Probable Cause to Seize Defendant's Vehicle

Defendant further argues that the officers did not have probable cause to seize his vehicle. Ordinarily, a seizure of personal property is *per se* unreasonable under the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause particularly describing the items to be seized. *See, e.g., Place*, 462 U.S. at 701. When law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Fourth Amendment to permit seizure of the property pending the issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it. *Id.* A vehicle's inherent mobility creates circumstances of such exigency. *See California v. Carney*, 471 U.S. 386, 393 (1985); *S. Dakota v. Opperman*, 428 U.S. 364, 367 (1976). The Supreme Court has held that a K-9 dog's alert provides probable cause to believe that a vehicle contains contraband, and therefore to search that vehicle, as long as the dog has been properly trained or certified. *Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013).

Here, the officers had probable cause, both to search the vehicle and to seize it. The K-9 dog alerted on two different areas of the vehicle. The officers have established that the K-9 was adequately trained and certified. Therefore, the K-9 alert gave the officers probable cause to believe that the vehicle contained contraband and to search the vehicle. However, in an

11

abundance of caution, the officers impounded the car to allow them to first seek a search warrant. Because the officers had probable cause to believe that the vehicle contained contraband, and the highly moveable nature of the vehicle created exigent circumstances, seizure of the vehicle to seek a search warrant was lawful. *See Florida v. White*, 526 U.S. 559, 564-65 (1999) (suggesting that warrantless seizure of a vehicle would not violate the Fourth Amendment where the police had probable cause to believe that respondent's car contained contraband or was itself contraband); *cf. Cardwell v. Lewis*, 417 U.S. 583, 593 (1974) (when the police have probable cause to conduct a search of a vehicle, and they impound the vehicle prior to conducting the search, the search is not unconstitutional).

### (5) Whether the Search Warrant Obtained for Defendant's Vehicle Was Based on Probable Cause

Finally, Defendant argues that the officers' search warrant for Defendant's vehicle was not based on probable cause. A judge may find probable cause to issue a search warrant when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). The reviewing court must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause. *See Gates*, 462 U.S. at 236; *U.S. v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993); *U.S. v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). The Court need not determine whether probable cause actually existed, but only whether there was a "substantial basis" for finding probable cause. *Jones*, 994 F.2d at 1054. In making this determination, the Court confines itself "to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." *Id.* at 1055. "[T]he resolution of doubtful or marginal cases

in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 1057-58 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

Here, Sergeant Otlowski's claims in the application for the search warrant provided a substantial basis for finding probable cause to search Defendant's vehicle. Sergeant Otlowski described in detail the observation of three suspected narcotics transactions, including one transaction involving Defendant just prior to entering the vehicle. Sergeant Otlowski also described the two alerts made by the K-9 dog on Defendant's vehicle, which is generally sufficient to provide probable cause for a search. The affidavit included information as to the K-9's certification and training. Including more detail about the K-9's background was not necessary. In any case, any doubt would need to be resolved in accordance with the preference accorded to warrants.

## CONCLUSION

For the reasons stated above, Defendant's motion to suppress will be denied. A corresponding order follows.

Anne E. Thompson, U.S.D.J.

13